JACOB PILDISH, FAMOUS CLEANING AND DYEING COMPANY, a corporation duly organized and existing under the laws of the State of Delaware, and DELAWARE COOPERATIVE CLEANING AND DYEING PLANT, INC., a corporation duly organized and existing under the laws of the State of Delaware,

*vs.*

ABRAHAM S. SCHAFER, otherwise known as Abe S. Schafer, and GUSTAVE SCHAFER, otherwise known as Gus Schafer.

*New Castle, Nov. 28, 1934.*

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, and *David S. Keil,* of the firm of Keil & Keil, for complainants.

*Philip Cohen,* for defendants.

THE CHANCELLOR: The complainant, Pildish, on September 27, 1927, purchased from Abe S. Schafer, Louis Schafer and Gustave Schafer the wholesale cleaning, dyeing and clothes pressing business theretofore conducted by them at 224 French Street, Wilmington, Delaware, under the firm name of Abe Schafer & Sons, for the consideration of $7500.00. The bill of sale from the Schafers to Pildish was *inter alia* of the said business together with the trade name and goodwill connected therewith, and it ran to Pildish, his executors, administrators and assigns. The bill of sale contained an agreement worded as follows:

"And we do further covenant and agree to and with the said party of the second part, that we will not jointly or severally become engaged in nor in any manner whatsoever become interested directly or indirectly for or through any other person or persons, firm or body corporate in any business similar to the one hereby sold as aforesaid within the radius of seventeen miles from the address and situation of the business hereby sold unto the said party of the second part for a term of ten years from the date of these presents. And we do further covenant and agree to and with the said party of the second part that we will not hold stock in any corporation or be an official thereof, or in any way be connected with or employed by any corporation engaged in the business of wholesale cleaning and dyeing within a radius of seventeen miles from the address and situation of the business hereby sold unto the said party of the second part for the term of ten years from the date of these presents."

Pildish conveyed the business together with its good-will and the benefits of the above covenant to Famous Cleaning and Dyeing Company, one of the complainants, in consideration for two hundred shares of its stock. Famous Cleaning and Dyeing Company in turn conveyed the business to the complainant, Cooperative Cleaning and Dyeing Plant, Inc., under an agreement that the latter would reconvey the same to Famous Cleaning and Dyeing Company, together with the benefits of the covenant before referred to, on December 31, 1935. Pildish is the president and majority stockholder in Famous Cleaning and Dyeing Company and is a salaried employee and Director of Co-operative Cleaning and Dyeing Plant, Inc.

1. The material question which the demurrer raises is whether or not the benefits of the covenant are assignable. If it appears that the benefit of a covenant of the character here involved is intended to be purely personal to the covenantee, it cannot of course be made the subject of assignment to another. But such is not the nature of the covenant in question in this case.

While the covenant in its express terms does not run in favor of Pildish and his assigns, yet the business, trade-name and goodwill were sold and transferred to him his "executors, administrators and assigns." The purpose of covenants such as this is to protect the purchaser in the enjoyment of the business and goodwill which he has bought. The fact that the business and its goodwill which were conveyed was contemplated by the seller as transferable to the purchaser's assigns, would indicate that the covenant which was designed to protect the thing sold was likewise intended to be transferable to the purchaser's assigns notwithstanding the exact phraseology of the covenant made no mention of assigns. In *Wright v. Scotton, et al.*, 13 *Del. Ch.* 402, 121 *A.* 69, 31 *A. L. R.* 1162, affirming *Scotton v. Wright*, 13 *Del. Ch.* 214, 117 *A.* 131, it was held that a protective covenant passed with the transfer of the business to which it was appurtenant, even though there

was no formal instrument of assignment. In that case, however, the covenant ran in express terms in favor of the purchaser and his assigns. Upon the narrow question here presented, *Wright v. Scotton* is therefore not an apposite authority. The question has not been passed on in this jurisdiction. Elsewhere, however, it has been decided that even though the covenant is in terms with the purchaser with no mention of his assigns, yet when it appears that its object is to protect the business, to keep it, and make it valuable, its benefits are not personal to the covenantee in the sense that they are not transferable with the business to a permissible assignee thereof. *Fleckenstein Bros. Co. v. Fleckenstein,* (*N. J. Ch.*) 53 *A.* 1043; *Knowles, et al., v. Jones, et al.,* 182 *Ala.* 187, 62 *So.* 514; *Haugen v. Sundseth,* 106 *Minn.* 129, 118 *N. W.* 666, 16 *Ann. Cas.* 259. On the material question presented by the demurrer, the bill is not assailable.

2. The demurrants object that Pildish and Famous Cleaning and Dyeing Company are improperly joined as parties complainant. These parties stand in the relation of successive assignors to Delaware Cooperative Cleaning and Dyeing Plant, Inc., the present owner of the defendants' former business. While they are neither indispensable nor necessary parties, yet they are proper parties. *Story, Equity Pleading,* § 153. Pildish undertook to put this covenant in circulation, so to speak, and he has sufficient interest in its establishment as an existing obligation to permit him to be joined, at least as a formal party, in a suit for its enforcement. The situation of Famous Cleaning and Dyeing Company is even stronger, for it appears that that company has a very special interest in the covenant's enforcement by reason of the fact that under its agreement with the present owner of the business it is to re-acquire the business in December of 1935 before the life of the covenant expires.

The demurrer will be overruled.